IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BETTY ROCKHILL-ANDERSON,           )
as Administratrix of the Estate of      )
Jesse James Anderson, deceased,        )
                                       )
            Plaintiff,                  )
                                       )
      v.                                )        CASE NO. 1:12-CV-579-WKW
                                       )                [WO]
DEERE & COMPANY,                      )
                                       )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Before the court are: Defendant Deere & Company's Motion for Summary Judgment (Docs. # 49); Deere's Motions to Exclude Testimony of Andrew Webb (Doc. # 47) and Thomas Berry (Doc. # 45); Plaintiff Betty Rockhill-Anderson's Motions to Exclude Testimony of Joe Kent (Doc. # 59) and Kirk Ney (Doc. # 60); and Deere's Motion to Strike Affidavits of Thomas Berry and Andrew Webb (Doc. # 93), which were filed in support of Betty's opposition to Deere's summary judgment and *Daubert* motions. The motions have been fully briefed, and no hearing has been held on the *Daubert* motions. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005) ("*Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." (internal quotation marks omitted)). Based on the

parties' arguments and the relevant law, the court concludes that the parties' motions are due to be granted in part and denied in part.[1]

## I. JURISDICTION AND VENUE

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).  The parties do not contest personal jurisdiction or venue.

## II. BACKGROUND

Betty is the Administratrix of the Estate of Jesse James Anderson who died in a tractor rollover accident in Coffee County on June 3, 2012.  The John Deere Model 2040 utility tractor at issue in this case belonged to Betty who purchased it thirdhand.  Deere manufactured the tractor in 1976 and sold it in 1977.  The tractor was not equipped with a rollover protective structure ("ROPS"), which, for purposes of this case, is a steel roll bar and a seat belt.  However, Deere made ROPS installation available at the time of purchase and thereafter as an optional feature.  Deere represents that consumers were reluctant to equip tractors with a ROPS because it limited the tractor's usefulness in low barns and orchards.  The

---

[1] The court has considered the following documentary submissions.

| Motion, Brief, and Evidence | Response and Evidence | Reply |
|---|---|---|
| **Deere** | | |
| Motion for Summary Judgment (49, 50) | (75, 80, 81, 82 83) | (90) |
| Motion to Exclude Thomas Berry (45, 46) | (76, 79) | (91) |
| Motion to Exclude Andrew Webb (47, 48) | (77, 78) | (92) |
| Motion to Strike Webb and Berry Affidavits (93) | (100) | (101) |
| **Betty** | | |
| Motion to Exclude Kirk Ney (60, 97) | (88) | (98) |
| Motion to Exclude Joe Kent (59) | (87) | (99) |

operator's manual for the tractor nevertheless recommended installation and use of a ROPS.

Betty maintains that without the installation of a ROPS as a standard safety feature on the tractor, the tractor was defective and unreasonably dangerous as designed, manufactured, and sold.   According to Betty, the tractor's defective condition caused Jesse's death.   She claims that a safer and practical alternative design was available to Deere in 1976, and that if the tractor had been fitted with a ROPS, Jesse's death would have been prevented.   She sues Deere pursuant to Alabama's Wrongful Death Act, Ala. Code § 6-5-410, for relief pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and common law negligence and wantonness.   (*See* Am. Compl. Counts I, II, & IV (Doc. # 18).)

When the accident occurred, Jesse was grading a dirt road on his farm with a blade implement attached to the tractor.   There were no witnesses to the accident – only witnesses who later responded to try to assist Jesse who was dead on the scene.   For unexplained reasons, the tractor rolled laterally to the right 180 degrees, crushing Jesse's head, neck, and abdomen underneath the fender.   Betty represents that Jesse was basically still in the driver's seat position with his feet on or near the pedals.   She claims that if the tractor had been equipped with a ROPS, it is unlikely that the tractor would have rolled over more than 90 degrees and crushed Jesse.

Deere does not dispute that Jesse was crushed or that he died from crushing injuries, but it contests that a ROPS would have prevented Jesse's death. Deere represents that there is no way to know whether Jesse would have been fatally injured had the tractor been equipped with a ROPS, "due to the numerous unknown factors that exist, *e.g.*, whether [Jesse] would have been wearing his seatbelt or whether his head would have struck the ground or some other portion of the tractor." (Doc. # 90, at 4.)

Furthermore, according to Deere, the Andersons' road slopes at approximately 15 degrees, and there are embankments of approximately 45 degrees on either side of the road. Deere says Jesse traveled backwards down the road, drove the tractor up onto one of the embankments, and negligently caused the tractor to overturn. Betty counters that Jesse was not attempting to grade the embankment, and that he did not intentionally drive the tractor onto the embankment. She "does not dispute the tractor encountered the embankment immediately prior to it turning over, [but] she disputes that [Jesse] 'drove' the tractor up and onto" it. (Doc. # 75, at 6.) While she admits that the tractor was moving backwards, she disagrees that Jesse was purposefully driving in reverse because no one recorded the gear position of the tractor at the time of the accident.

The parties also dispute whether Deere has admitted, through Kirk Ney as a corporate representative, that a ROPS would have prevented Jesse's death. (*See*

Pretrial Order (Doc. # 125, at 6 ("Contrary to [Betty]'s assertion, Deere has not admitted that [Jesse]'s fatal injuries would have been prevented in this incident if the subject tractor has been equipped with a ROPS.").)   Betty raises the "admission" issue in nearly every brief submitted on the pending motions.[2] Likewise, she repeatedly argues that Deere's documents and testing data relating to its design of the ROPS confirm her experts' opinions.

In support of their theories of the case, the parties have both employed a design expert and an accident reconstruction expert.  Betty's experts are Andrew Webb (accident reconstruction) and Thomas Berry (design expert).  Deere's are Joe Kent (accident reconstruction) and Kirk Ney (design expert).  Each party opposes the other's experts' opinion testimonies for various reasons.  Deere's motion for summary judgment is partially intertwined with its *Daubert* motions.

### III.  STANDARDS OF REVIEW

**A.   _Daubert_ Motions**

Federal Rule of Evidence 702 provides that

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[2] For example, Betty contends that Kirk Ney admitted that if the tractor had been manufactured with a ROPS, "[the ROPS] would have prevented the injury."  (Doc. # 75, at 16 (citing Dep. Kirk Ney, Doc. # 49-1, at 247:3–17).)  In his capacity as Deere's design expert, Mr. Ney also testified that he agreed that "based upon a reasonable degree of engineering probability that had this tractor been equipped with the optional ROPS that Jesse could not have been crushed" in the manner that he was crushed.  (Dep. Kirk Ney at 218:10–16, (Doc. # 60-3, at 56).)

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that it is the district court's function to serve as "gatekeeper" and to ensure that an expert's testimony rests on a reliable foundation and is relevant.   When assessing the reliability of scientific testimony, the court should consider the four factors laid out in *Daubert*.   *Id.* at 593–94.[3]   But the *Daubert* factors are not an exhaustive list of considerations, and the *Daubert* factors are to be applied "flexibl[y]."   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

"The *Daubert*-type analysis should not be used to disfavor expert testimony grounded in experience or engineering practice rather than in pure scientific theory."   *Morris v. Fla. Transformer, Inc.*, 455 F. Supp. 2d 1328, 1331 (M.D. Ala. 2006) (Thompson, J.) (citing *Kumho*, 526 U.S. at 150).   "However, if the witness is

---

[3] The factors are: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013).

relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Id.* (quoting Fed. R. Evid. 702, advisory committee notes, 2000 amendment) (internal citations and quotations omitted); *see also Kumho* 526 U.S. at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

**B.**   **Motion to Strike Affidavits**

Federal Rule of Civil Procedure 37(c) "provides the consequences for a party's failure to disclose, pursuant to the requirements of Rule 26." *Nance v. Ricoh Elecs, Inc*., 381 F. App'x. 919, 922 (11th Cir. 2010). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* (citing Fed. R. Civ. P. 37(c)(1)).  Factors that should inform the court's ruling include "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party." *Id.* (quoting *Fabrica*

*Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982)).

## C.   <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that

[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Id.* at 324.   A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

# IV.  DISCUSSION

The discussion proceeds in the following order:  Deere's motions to exclude Andrew Webb and Thomas Berry (Docs. # 47, 45) (Parts A, B); Deere's motion to strike the affidavits of the same experts (Doc. # 93) (Part C); Betty's motions to exclude Deere's experts, Joe Kent and Kirk Ney (Docs. # 59, 60) (Parts D, E); and Deere's motion for summary judgment (Doc. # 49) (Part F).

## A.  <u>Motion to Exclude Testimony of Andrew Webb (Doc. # 47)</u>

Andrew Webb is Betty's accident reconstruction expert.  He has background experience in safety design as a six-year Caterpillar employee, where he led the development of open- and cab-ROPS for several tractor models.  Deere contends that the court should exclude Mr. Webb's opinion testimony that (1) the 2040 tractor would have rolled only 90 degrees if it had been equipped with a ROPS; and (2) Jesse would not have suffered fatal injuries if the tractor had stopped rolling at 90 degrees.

### 1.  *Whether Mr. Webb's Opinion that the Tractor Would Have Rolled Only 90 Degrees if Equipped with a ROPS is Supported by Accurate Facts and Data*

Deere contends that Mr. Webb's opinion that Jesse's tractor would have only rolled 90 degrees if equipped with a ROPS is unreliable, unsupported by accurate facts and data, and unhelpful to the jury.  Deere asserts that Mr. Webb

9

conducted accident reconstruction analysis using inaccurate dimensions for the ROPS roll bar, which is incompatible with Betty's theory and Thomas Berry's opinion that the Deere-manufactured, optional ROPS is the alternative design to be considered in this case. "Specifically, [Mr.] Webb's analysis assumed roll bar heights from 96 to 105 inches," while "[t]he height of the Deere roll bar for this particular tractor . . . [is] 89.8 inches." (Doc. # 47, at 5.) Deere represents that the measurements of the ROPS were identified in the owner's manual and therefore readily available to Mr. Webb and Betty. Deere posits that admitting Mr. Webb's testimony, which is based on unreliable numbers, will confuse and mislead the jury, and therefore, it must be excluded.

Betty explains that Deere provided Mr. Webb with ROPS design drawings that were "illegible" and that "the height of the Deere ROPS could not be ascertained" from the documents. (Doc. # 77, at 2, 12.) Without proper measurements, Mr. Webb performed two different accident reconstruction analyses, one with a ROPS height of 96 inches and the other with a height of 105 inches, and in each situation, the ROPS prevented a 180-degree rollover. Mr. Webb used these numbers based on his professional experience in designing ROPS and based on his measurements of the model 2040. He says he used two different numbers in order to show that a slight variation in size made no difference. Betty points out that Mr. Webb's opinion is that the tractor would not have rolled more

than 90 degrees if equipped with *a* ROPS, not *Deere's* ROPS.  (*See* Doc. # 77, at 13–14.)  In Betty's view, Deere fails to explain why it should matter that Mr. Webb did not use the precise measurement for Deere's ROPS.

Additionally, Betty explains that after she obtained legible drawings in August 2013, following the deposition of Kirk Ney, Mr. Webb performed a third analysis using the correct height of 89.8 inches.  In an affidavit, Mr. Webb claims that his ultimate opinion remains the same:  Deere's roll bar would also have prevented a 180 degree rollover.

In reply, Deere says Mr. Webb's "do-over" with the correct measurement will not save the case.  Deere says Betty never asked for clearer design documents, and Mr. Webb never bothered to obtain the correct measurement himself, which were within the tractor's owner's manual.  Deere complains that the deadline for Betty to disclose expert reports was June 21, 2013, and that the time permitted for deposing Mr. Webb has also passed.  Thus, the revised opinion based on the accurate ROPS height measurement is untimely disclosed.

Federal Rule of Civil Procedure 26(a)(2) required Betty's disclosure of Mr. Webb and his written report at the time ordered by the court, or otherwise, "at least 90 days before the date set for trial."  Betty's original disclosure met both the court's June 21, 2013 deadline and the Rule's 90-days-prior-to-trial deadline, because the trial setting of this case was continued from October 2013 to February

2014.  Any supplementation to "information included in [Mr. Webb's] report and to information given during [his] deposition" must have been disclosed on or before the deadline for the parties' pretrial disclosures under Rule 26(a)(3).  Fed. R. Civ. P. 26(e)(2).  The Rule 26(a)(3) pretrial disclosure deadline just recently passed on January 16, 2014, and obviously, Mr. Webb's additional opinion was disclosed far in advance of that deadline when Betty submitted the affidavits to the court in September 2013.  Thus, the disclosure of Mr. Webb's supplemental report and testimony was not untimely.

Even if Betty's supplemental disclosure of Mr. Webb's additional opinion was untimely, there is little prejudice to Deere because Mr. Webb's ultimate opinion did not change, and his new analysis was based on information that always has been within Deere's possession.  *See infra* Part IV(C) (discussing Fed. R. Civ. P. 37(c)).  The motion to exclude Andrew Webb's testimony on this ground is due to be denied.

### 2.    *Whether Mr. Webb's Opinion that a ROPS Would Have Prevented Jesse's Death is Admissible*

Deere moves to exclude Mr. Webb's opinion as to whether the alternative design would have prevented Jesse's death.  Deere contends that "[a]s a mechanical engineer, [Mr.] Webb does not possess the specialized medical knowledge, skill, training[,] or education required for him to credibly render an

opinion" as to Jesse's cause of death.  (Doc. # 47, at 8.)  Deere also asserts that inadequate testing supports Mr. Webb's opinion.

Deere first criticizes Mr. Webb for his lack of biomechanical, kinematical, or medical expertise and suggests that only a person with training and experience in those fields could be qualified to explain how Jesse's fatal injuries might have been prevented.  *See Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) ("[A] witness may not qualify – through reading and preparation – as an expert in an entirely different field or discipline.  Instead, he must stay within the reasonable confines of his subject area.  Thus, many courts have excluded testimony when they determine that the witness is testifying to an area outside of – but related to – his expertise." (internal quotation marks and citations omitted)).  Deere cites *Morris v. Fla. Transformer, Inc.*, 455 F. Supp. 2d 1328 (M.D. Ala. 2006), in support of its position.  In *Morris*, the plaintiff needed to prove that defendant's collision with her deceased husband's truck, rather than his truck's prior rollover, caused his death.  Her only evidence supporting causation was her accident reconstruction expert who opined, on the basis of his general experience with overturned trucks, that he had never seen injuries so severe as the decedent's injuries.  Thus the expert surmised that it was very unlikely that the decedent's injuries and death were due to the rollover, and rather, were attributable

to the defendant's subsequent high-speed impact with the decedent's overturned truck.

The court excluded the expert's opinion as to the cause of death for numerous reasons. First, it found that the expert was not qualified as an expert on cause of death by knowledge, skill, experience, training, or education because the expert admitted that he was not a medical doctor, had no formal medical training, was not a cause-of-death expert, was not a biomechanics expert, and he lacked a "reasonable degree of medical/biomechanical engineering certainty as to what caused the decedent's death." 455 F. Supp. 2d at 1333. The court found the expert's accident reconstruction experience to be distinct from and an inadequate substitute for expertise in determining cause of death. Second, the court excluded the expert's opinion because it was not based upon sufficient facts or data (*i.e.*, the expert relied solely upon an autopsy report). And third, the court concluded that the expert failed to use reliable principles and methods to reach his opinion about the cause of death because there was more than one accident that could have caused the death.

Betty distinguishes *Morris* and contends that there are no competing theories of causation in this case and that Mr. Webb's opinion is based on more substantial evidence. (Doc. # 77, at 21–22.) She does not directly rebut Deere's use of *Morris* to criticize Mr. Webb's lack of medical or biomechanical expertise. Instead, Betty

argues that Mr. Webb's "extensive experience in designing, developing[,] and testing ROPS" is adequate to support his opinion testimony.  (Doc. # 77, at 19.)

Deere replies that "there is no way to know whether [Jesse] would have been fatally injured had the tractor been equipped with a ROPS, due to the numerous unknown factors that exist, *e.g*., whether [Jesse] would have been wearing his seatbelt or whether his head would have struck the ground or some other portion of the tractor."  (Doc. # 92, at 7 n.5.)  Deere maintains that it is Betty's burden to present evidence that Jesse would not have died had the tractor been equipped with a ROPS, and she fails to do so because Mr. Webb is not a biomechanical or injury causation expert.

Additionally, Deere criticizes Mr. Webb's scientific approach to reaching his opinion that Jesse's tractor would not have rolled over and killed him if it had been equipped with a ROPS.  Mr. Webb was "not asked to offer any opinions related to [Jesse]'s cause of death, human factors analysis, occupant kinematics, or occupant reaction times."  (Doc. # 47, at 10.)  Deere points out Mr. Webb's admission that he "[did] not put [Jesse] in the tractor in [his] analysis" of the accident reconstruction.  (Doc. # 47, at 11.)  In other words, Deere's position is that Mr. Webb's reconstruction fails to account for Jesse's presence, size, movements, reactions, etc., on the tractor.

Deere's contentions are understood, but there are several reasons that Mr. Webb should not be excluded from testifying that Jesse would not have died *in the manner that he did* had the tractor been equipped with a ROPS.[4]  First, the court agrees with Betty that the ruling in *Morris*, although persuasive, is distinguishable on its unique facts and on the expert's lack of data to support his opinion.  Second, Mr. Webb's opinion is not a stab in the dark.  It is almost a self-evident proposition that a tractor without a ROPS will crush the operator to death if it overturns 180 degrees while the operator remains in the seat.  And it is reasonable that a tractor with a roll bar, designed to prevent a rollover and proven capable of preventing a rollover, would in fact prevent a rollover.  Even though these are not complex propositions, Betty must convince a jury of these matters to prevail on her AEMLD claim.  *See Gen. Motors Corp. v. Jernigan*, 883 So. 2d 646, 662 (Ala. 2003) (requiring plaintiff to prove that "[her] injuries would have been eliminated or in some way reduced by use of the alternative design"); *see also Bloodsworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348, 1353 (M.D. Ala. 2006) ("[O]rdinarily, expert testimony is required" in a product liability case).  Mr. Webb is qualified by his experience to testify to his opinion.  The court will not deny Betty the opportunity to prove her case by granting Deere's motion to exclude Mr. Webb's testimony.

---

[4] *I.e.*, Mr. Webb may testify that, in his opinion, Jesse would not have been crushed fatally if the tractor had been furnished with a ROPS.

16

Third, while biomechanically- or kinematically-based expert opinion testimony might bolster Betty's case, it is not essential that Mr. Webb account for biomechanics or kinematics to testify to his opinion that a ROPS would have prevented a 180-degree rollover with fatal, crushing injuries.  In the Federal Judiciary Center's *Reference Manual on Scientific Evidence*, the authors lament the "all too common situation where an engineering expert's qualifications have been challenged based on 'name' rather than on relevant and documented experience." "Reference Guide on Engineering," *Reference Manual on Scientific Evidence* 949 (3d ed. 2011).  The authors advise that trial courts "should be cautious about drawing conclusions about an expert's qualifications based solely on titles, licenses, registration, and other such documentation." *Id.*  Upon consideration of the nature of Mr. Webb's proffered opinion, this is such an instance where the court should admit the opinion testimony in spite of the expert's lack of expertise in the field of biomechanics or kinematics.

Finally, any weakness in Mr. Webb's analysis as it relates to biomechanics and kinematics is fodder for cross examination.  But to reach the straightforward opinion at issue here – *i.e.*, that a ROPS would have prevented the rollover and the fatal crushing injuries Jesse experienced – it is not essential that Mr. Webb "put Jesse in the tractor."  Mr. Webb's opinion is adequately supported by sufficient

data and is the product of a reliable method of accident reconstruction.  Deere's motion is due to be denied.

Assuming that a proper foundation is laid at trial, Mr. Webb will be allowed to testify to his opinions.

**B.**     **Motion to Exclude Testimony of Thomas Berry (Doc. # 45)**

Thomas Berry is Betty's design expert.  He is a mechanical engineer with roughly thirty years of experience in tractor design and safety analysis.  Deere moves to exclude Mr. Berry's opinion testimony that (1) the tractor should have been equipped with a ROPS; (2) a ROPS would have limited rollover to 90 degrees; (3) a ROPS would have prevented Jesse's death; (4) Deere knew that the ROPS should have been standard equipment and that consumers were not electing to purchase the ROPS as optional equipment.

**1.**     *Whether Mr. Berry's Opinion that the Tractor "Should Have Been"*
           *Equipped with a ROPS is Admissible*

Mr. Berry opines that the "ROPS should have been provided as standard equipment" on Deere's Model 2040 tractor, "not just as an option."  (Report of Thomas A. Berry, P.E., Doc. # 81-4, at 28 ¶ 1.)  Deere objects that the issue of "whether the ROPS should have been a standard or optional feature . . . is not a proper area of expert testimony."  (Doc. # 45, at 5.)  Deere avers that this is a question that a layman could answer without the assistance of expert testimony.

*See Rosenfeld v. Oceania Cruises, Inc.*, 682 F.3d 1320, 1331 (11th Cir. 2012) ("[M]atters of common sense typically do not require or allow for expert testimony."). Further, Deere protests that Mr. Berry's testimony "is nothing more than Monday Morning Quarterbacking" that cannot be scientifically tested. (Doc. # 45, at 6–7.)

Betty counters that "[Mr.] Berry's testimony and opinions . . . are helpful to a jury in understanding [Deere's] technical documents, applying industry and engineering standards, as well as sound engineering judgment." (Doc. # 76, at 14.) Further, she asserts that testing of Mr. Berry's expert engineering opinion is not necessary. *See Reid v. BMW of N. Am.*, 430 F. Supp. 2d 1365, 1369–70 (N.D. Ga. 2006) ("[W]hether a theory or technique has been tested may be a relevant consideration in some cases, [but] in others[,] the relevant reliability concerns may focus upon personal knowledge or experience. In a products liability case, a technical field like engineering often relies on more idiosyncratic methods of design and testing. Therefore, it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence." (internal quotation marks and citations omitted)).

While Betty is correct that an engineer's opinion testimony does not have to be testable, Deere's motion is well taken inasmuch as Mr. Berry's opinion is not

necessary to assist the jury in determining whether Deere should be held liable. Accordingly, Deere's motion to exclude this opinion is due to be granted.

**2.** ***Whether Mr. Berry's Opinion that the Tractor Would Have Rolled Only 90 Degrees if Equipped with a ROPS is Supported by Scientific Methodology***

Deere asserts that the court should exclude Mr. Berry's opinion that a ROPS-equipped tractor "would likely have limited the rollover . . . , stopping [the tractor] on its side rather than [roll]ing over 180 degrees." (Report of Thomas A. Berry, P.E., Doc. # 81-4, at 28 ¶ 8.) According to Deere, Mr. Berry "applied an insufficient level of intellectual rigor" in reaching that opinion. (Doc. # 45, at 8.) First, Deere claims that Mr. Berry should not be entitled to rely on Betty's other expert witness, Andrew Webb, discussed *supra*, because Mr. Webb's testimony and work are unreliable. Second, and more fundamentally, Deere criticizes Mr. Berry for not using a scientific or technological methodology in reaching his opinion. More specifically, Mr. Berry did not (1) put a ROPS-fitted tractor in the same position as Betty's tractor, with or without taking into account the slope of Jesse's road or the influence of the road's embankments, (2) simulate via computer what would have happened to a ROPS-fitted tractor, or (3) calculate the likelihood of rollover if the tractor had been ROPS-fitted. (*See* Doc. # 45, at 8–9.)

Betty responds that Mr. Berry's opinion is based upon (1) his extensive, general experience in rollover-testing tractors, (2) his experience designing ROPS like the ones Deere manufactured, and (3) his knowledge and study of rollover testing data collected by Deere and other tractor manufacturers. Betty contends again that Rule 702 does not demand that Mr. Berry conduct testing, *see Reid*, 430 F. Supp. 2d at 1369–70, and she criticizes Deere for not explaining why testing is necessary. She argues that testing is especially unnecessary in a case like hers where the alternative design is already on the market and proven to be safer. As for Deere's argument that Mr. Berry should not rely on Mr. Webb's reconstruction analysis, she responds that Mr. Berry also relied on a comparison of Jesse's accident with rollover simulations and tests performed by Deere and International Harvester – not just Mr. Webb. (*See* Aff. of Thomas Berry, Doc # 79-1, at 7 ¶ 10.)

Deere replies by reiterating that Mr. Berry's expert opinion on the rollover is insufficient unless he performs analysis specific to the particular accident, tractor, and slope in this case. (Doc. # 91, at 2.) Yet Deere fails to show how Mr. Berry's opinion is not based on sufficient facts or data, or why Mr. Berry cannot form his opinion based on facts and data that are derived from the work of others. *See Jernigan*, 883 So. 2d at 663 (affirming the admission of expert testimony where the expert "did not personally conduct any tests" but relied on "significant test data from GM," the two automobiles involved in the subject accident, and his own

"considerable personal expertise").   Mr. Berry's opinion is not baseless, and Deere's motion is due to be denied on this issue.

### 3.   Whether Mr. Berry's Opinion that a ROPS Would Have Prevented Jesse's Death is Admissible

Like Mr. Webb, Mr. Berry opines that "[a] ROPS would have prevented [Jesse] from being fatally injured due to being crushed under the . . . tractor when it rolled over."  (Doc. #81-4, at 28 ¶ 7.)  Deere opposes admission of this testimony for similar reasons argued in Deere's opposition to Mr. Webb's testimony on the same issue.

### a.   Mr. Berry's Qualifications

First, Deere argues that Mr. Berry is not qualified to offer an expert opinion regarding Jesse's cause of death or whether Jesse's death would have been prevented if the tractor had been equipped with a ROPS.  Deere points out that Mr. Berry lacks medical knowledge or education and does not consider himself to be a biomechanical engineer or kinematics expert.  *See Trilink*, 583 F. Supp. 2d at 1304; *Morris*, 455 F. Supp. 2d at 1333.

The court finds that Mr. Berry's decades of career experience, training, and research qualify him to render an expert opinion that Jesse would not have died *in*

*the manner that he did* had the tractor been manufactured with a ROPS.[5]   This ruling is based on the same reasoning provided *supra* at Part IV(A)(2).

### b.   Mr. Berry's Lack of Testing to Support His Opinion

Deere also moves to exclude Mr. Berry's opinion on whether a ROPS would have prevented Jesse's death on the grounds that Mr. Berry was not retained for the purpose of rendering a cause of death opinion and he did nothing to test what would have happened to Jesse in a ROPS-equipped tractor.

Betty argues that in light of the extensive research on the protection provided by a ROPS, it was not necessary for Mr. Berry to perform testing of his own.  She avers that Mr. Berry's opinion is supported by "his prior ROPS testing experience, his experience in designing and developing ROPS, . . . his study and review of tractor manufacturer testing and technical documents, [and his] review of the scene, tractor[,] and information produced in this case."   (Doc. # 76, at 27.) Moreover, Betty contends, common sense supports Mr. Berry's opinion that a ROPS would have prevented Jesse from being crushed by the tractor if the tractor did not overturn completely.

There was no need for Mr. Berry to perform duplicative tests when others' tests were adequate to support his opinion.   Based on his knowledge and experience as an engineer, Mr. Berry is entitled to rely on the reliable work of

---

[5] *I.e.*, Mr. Berry may testify that Jesse would not have been crushed fatally if the tractor had been furnished with a ROPS.

others and on his general experience and knowledge. *Jernigan*, 883 So. 2d at 663; *see also Reid*, 430 F. Supp. 2d at 1370. Deere's motion to exclude Mr. Berry's testimony on the issue of the ROPS's ability to prevent Jesse's injury is due to be denied.

###    4.    *Whether Mr. Berry's Opinion that Deere Knew Certain Information is Admissible Expert Opinion Testimony*

Lastly, Deere asks the court to bar Mr. Berry from offering his opinion testimony that (a) articles written by Deere engineers show Deere's knowledge that it ought to have made ROPS standard equipment, and (b) Deere knew that its efforts to encourage customers to opt in favor of installing the ROPS were failing. (Doc. # 45, at 14.) In support of its position, Deere cites *In re Trasylol Products Liability Litigation*, 709 F. Supp. 2d 1323, 1346, 1351 (S.D. Fla. 2010), where the court refused to admit proffered expert opinion that "consist[ed] of summaries of [defendants'] internal documents" and inferences about defendants' "knowledge and intent." Essentially, Deere argues that such testimony is without a proper foundation and invasive of the province of the jury.

Betty counters that Mr. Berry's opinions are based in documentary evidence and are not speculative. She claims that this evidence of Deere's knowledge is essential to her wantonness claims.

Deere is correct that the jury does not need Mr. Berry's expert opinion to help them understand the evidence relating to the issue of Deere's knowledge. *See* Fed. R. Evid. 702(a); *Traysol*, 709 F. Supp. 2d at 1346. Deere's motion to exclude Mr. Berry's opinion testimony as to Deere's knowledge is due to be granted.

In summary, Deere's motion to exclude the testimony of Thomas Berry is due to be granted with respect to Mr. Berry's opinions that Deere should have made the ROPS standard equipment and that Deere knew that the ROPS should have been standard equipment or that its customers were refusing to purchase the ROPS as optional equipment. In all other respects, Deere's motion to exclude the testimony of Thomas Berry is due to be denied. Assuming that a proper foundation is laid at trial, Mr. Berry will be allowed to testify to his opinions.

## C.  Motion to Strike Berry and Webb Affidavits (Doc. # 93)

In opposition to Deere's motions to exclude Mr. Berry's and Mr. Webb's expert testimonies, and in opposition to Deere's motion for summary judgment, Betty submitted affidavits of Mr. Berry and Mr. Webb. (*See* Docs. # 78-1, 79-1 81-4, 81-5.) Deere moves to strike the affidavits on the grounds that (1) the opinions within the affidavits are untimely disclosed, and (2) there is inadmissible opinion testimony within the affidavits. Deere protests that Betty did not seek the court's permission to supplement her expert disclosures, which were due June 21,

2013.  Betty filed the affidavits almost three months later on September 20, 2013.

Citing the court's discretionary authority to exclude the affidavits, Deere asks the

court to strike them as untimely.  Deere's supporting arguments as to admissibility

are mostly repetitive of Deere's criticisms of Mr. Berry and Mr. Webb in Deere's

*Daubert* motions.  *See supra* Part IV(A)–(B).

Betty contends that Deere fails to offer a good reason for striking the

affidavits.  Betty disagrees that the affidavits untimely disclose information.  She

represents that the affidavits "do not set forth any new opinion testimony and are

consistent with [her] expert[s'] reports and deposition testimony in this matter."

(Doc. # 100, at 1.)  She argues that there is no "inherent inconsistency between

[her experts'] affidavits and [their] deposition[s]" requiring the court to strike the

affidavits.  *Woodley v. PFG-Lester Broadline, Inc.*, 556 F. Supp. 2d 1300, 1304

(M.D. Ala. 2008) (De Ment, J.).  Rather, she says, her experts' opinions remain the

same, and the affidavits serve the purpose of clarifying her experts' reports and

deposition testimonies.  *See id*. at 1306.  Additionally, as the affidavits relate to her

opposition to Deere's summary judgment motion, Betty contends that the affidavits

comport with the requirements of Rule 56(c).

Deere replies that the affidavits contain previously undisclosed expert

opinions.  It contends that a denial of the motion to strike will deprive Deere of its

right to "prepare for effective cross examination" and to obtain "expert testimony

from other witnesses" because Betty's experts' depositions have been taken already and the discovery deadline has passed.  *See* Fed. R. Civ. P. 26(a)(2) advisory committee notes.   Deere highlights what is allegedly "new" in the experts' affidavits as compared with the experts' prior reports and deposition testimonies.  (*See* Doc. # 101, at 3–4.)

Upon review of Deere's objections and the "new" material in Mr. Webb's and Mr. Berry's affidavits, the court finds that Deere's motion to strike is due to be denied.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." (emphasis added)).   The overall opinions expressed in the affidavits are consistent with previously disclosed reports and deposition testimonies.  Furthermore, Deere is not substantially prejudiced by the admission of testimony concerning previously undisclosed issues (*e.g.*, Mr. Webb's additional testing with the correct ROPS height, or Mr. Berry's supplemental testimony as to the tractor's center of gravity and the level of energy involved in the rollover).  Deere has known the height of the ROPS, as well as the tractor's center of gravity,[6] and Deere has proven capable of preparing rebuttal expert opinion testimony.  As for any inconsistent statements

---

[6] (*See generally* Dep. Deere expert Joe Kent (Doc. # 59-3) (discussing the tractor's center of gravity).)

(*e.g.*, Mr. Webb's deposition testimony that he had done everything necessary to support his opinion versus his later admission that he needed to supplement his analysis), Deere may impeach Betty's experts on cross examination at trial.

**D.    Motion to Exclude Testimony of Joe Kent (Doc. # 59)**

Joe Kent is Deere's accident reconstruction expert.  He is a professional engineer with past experience with Lockheed Aircraft and B.F. Goodrich.  Mr. Kent reconstructed the accident by placing the tractor in four positions, with the fourth position being the undisputed final place of rest following the rollover.  He ultimately opines that the rollover occurred because Jesse negligently backed the tractor up onto an embankment to a tipping point that forced the rollover.  Betty moves to exclude Mr. Kent's testimony for several reasons.

**1.    *Whether Mr. Kent's Reconstruction Analysis is Unreliable***

Betty claims that "[Mr.] Kent has done no mathematical or numerical calculations to arrive at [his] opinions," and "his reconstruction is nothing more than uploading information into a graphics program and placing the tractor where he wanted it to go based on scene photographs." (Doc. # 59, at 5.)  Betty contends there is an "analytical gap between the data and the opinion proffered." (Doc. # 59, at 5 (quoting Fed. R. Evid. 702, advisory committee notes).)  Further, she claims that the jurors will have the same information that Mr. Kent relied upon

28

(*i.e.*, photos and witness statements), so Mr. Kent's opinion testimony will not assist them in understanding the evidence.

More specifically, Betty criticizes Mr. Kent's failure to perform sufficient numerical calculations as to speed, roll rate, velocity, or Jesse's reaction time. She points out Mr. Kent's admission that he lacks information to confirm his placement of the tractor at points one, two, and three of his four-step reconstruction model. Betty also complains that Mr. Kent has not done an analysis of the accident with a ROPS.

Deere responds that Betty "grossly understates the work that went into Mr. Kent's accident reconstruction." (Doc. # 87, at 2.) Deere says that Mr. Kent has relied on an analysis of the physical terrain, photographs of the scene and tractor, the dimensions of the tractor, the condition of the tractor, and witness testimony as to tire and blade marks. From this information, Mr. Kent performed an analysis that "yield[s] the most logical sequence of events." (Doc. # 87, at 6.) Deere furnished Mr. Kent's depictions of this sequence in support of its arguments. (Doc. # 87-2.) Ultimately, Deere contends that Betty's criticisms go to the weight of the evidence rather than to admissibility.

Mr. Kent's reconstruction is plausible and is based on sufficient facts and data including known tire and blade marks, the degree of incline of the road's embankment, and the angle at which the tractor would be forced to roll over.

Furthermore, it is based upon a reliable method of working "backward" from what is known – *i.e.*, the tractor's final resting point – and upon consideration of relevant factors like the surrounding terrain and physical evidence. Thus, Mr. Kent's reconstruction opinion testimony is admissible and potentially helpful to the jury, and Betty's motion to exclude this testimony is due to be denied.

## 2. *Whether Mr. Kent is Qualified to Offer an Opinion About the Usefulness of Other Tractors on Jesse's Property*

Mr. Kent has opined that Jesse failed to use a different tractor more suitable for grading the dirt road. Betty argues that Mr. Kent is a mechanical engineer – not a farmer with expertise in operating farm equipment. She claims that Mr. Kent's opinion is speculative because he has no knowledge about how other tractors would have performed, and additionally, she argues that the testimony is irrelevant and prejudicial.

Deere responds that Mr. Kent's opinion is from his vantage point as an engineer and his opinion does not go as far as Betty claims. Deere says that Mr. Kent merely believes that the implement Jesse used to grade the road was compatible with other tractors on the farm, and this opinion does not require that he have experience operating farm machinery.

If Jesse could have used other available, better-suited farm equipment, that fact might be relevant to Deere's defense theory that Jesse's negligence caused the

accident.  But the question of what Jesse should or could have done in this case is not a matter that requires an expert opinion testimony.  *See* Fed. R. Evid. 702(a). Deere may establish the availability of other tractors on the farm and their compatibility with the blade implement without calling for testimony in the form of an opinion.  To the extent that Mr. Kent might testify that Jesse "could have and should have" used a different tractor, Betty's motion to exclude Mr. Kent's testimony is due to be granted.

### 3.   *Whether Mr. Kent is Qualified to Offer Biomechanical or Injury Causation Testimony*

Betty seeks to prevent Mr. Kent from testifying about how he believes that Jesse's body moved during the rollover.[7]  Mr. Kent testified at deposition that the basis for his opinion on this topic was limited to "the basic physics [law that] an object in motion remain[s] in motion unless acted upon by an external force." (Dep. Joe Kent at 113:12–20 (Doc. # 59-3, at 30).)   Betty finds this testimony objectionable because Mr. Kent is unqualified to offer biomechanical testimony, has not been offered by Deere as an expert in occupant kinematics, and did not

---

[7] At his deposition, Mr. Kent opined, "I believe that [Jesse] was basically in contact with the seat until . . . the rate of roll of the tractor caused the seat to accelerate faster than just pure gravitational acceleration.  In other words, as the tractor started to tip, [and] the seat started to go down, there could have been some separation between the two.  And certainly when the side of the right tire hit the ground, the rate of roll of the tractor slowed, and [Jesse's] velocity . . . would continue at its previous rate.  So there would be some degree of separation and then [Jesse], part of him, if not all of him, would hit the ground followed by the tractor which was slowed by the contact with the flat surface of the outside of the right tire."  (Dep. Joe Kent at 115:20–116:18 (Doc. # 59-3, at 30).)

include this opinion in his expert report.  Additionally, she argues that Mr. Kent's knowledge about the laws of physics does not surpass the average person's knowledge of the laws of physics.

Deere responds by arguing that Betty exaggerates the breadth of Mr. Kent's testimony.  Deere claims that Mr. Kent offers no opinion about any forces acting upon Jesse, the cause of Jesse's injuries, or what Jesse's injuries might have been if the tractor had been equipped with a ROPS.  Instead, Mr. Kent answered counsel's question during his deposition about how Jesse's unrestrained body responded to the rollover.  Moreover, Deere contends that it does not matter that Mr. Kent's opinion was not in his expert report because Betty had the opportunity to question Mr. Kent at his deposition and to prepare her case accordingly.

Upon consideration of the arguments, the court concludes that there is no reason to exclude Mr. Kent's opinion that Jesse's body moved in accordance with the laws of physics.  Mr. Kent's engineering knowledge qualifies him to testify to a simple, but nonetheless scientific, question.  *See United States v. Lamarre*, 248 F.3d 642, 648 (7th Cir. 2001) ("Trial courts are not compelled to exclude all expert testimony merely because it overlaps with matters within the jury's experience.").  Moreover, Mr. Kent's opinion may help the jury understand what happened to Jesse during the rollover.  Consequently, Betty's motion to exclude Mr. Kent's

testimony concerning Jesse's movement in accordance with the laws of physics is due to be denied.

In summary, Betty's motion to exclude the testimony of Joe Kent is due to be granted as to Mr. Kent's testimony concerning the availability and propriety of other farm equipment for grading the road; but in all other respects, Betty's motion to exclude Mr. Kent's testimony is due to be denied.  Assuming that a proper foundation is laid at trial, Mr. Kent will be allowed to testify to his opinions.

**E.    Motion to Exclude Testimony of Kirk Ney (Doc. # 60)**

Kirk Ney is Deere's design expert.  He has worked most recently for Deere in accident investigation and reconstruction after spending eighteen-and-one-half years in product design and development.  In his report, Mr. Ney opines that "[t]he existence of a ROPS does not guarantee that an operator will not be injured or killed during a rollover.  Given the slope of the embankment [on the side of the dirt road] and the slope of the roadway, a ROPS-equipped tractor *may not have stopped at 90 degrees* during a roll."  (Doc. # 60-1, at 11 (emphasis added).)  Betty protests that this opinion is irrelevant, unreliable, and inadmissible.

**1.    *Whether Mr. Ney's Opinion Should Be Excluded as Irrelevant***

As Betty has argued in opposition to each of Deere's motions, she claims that Mr. Ney has admitted that a ROPS would have prevented the crushing injuries Jesse suffered.  Betty contends that Mr. Ney's opinion that the tractor may have

rolled over, even with a ROPS, is therefore irrelevant.  She posits that even if there is probative value in Mr. Ney's opinion testimony, admitting it would still confuse the jury.

Deere responds that Mr. Ney's testimony is relevant for purposes of rebutting Betty's experts' opinions that a ROPS would have limited a rollover to 90 degrees.  Further, Deere contends it has never admitted that a ROPS would have prevented "this particular accident."  (Doc. # 88, at 6.)

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Here, the effectiveness of the ROPS is a fact of consequence.  If the jury believes that a ROPS would not have prevented the tractor from rolling over, then maybe Deere undermines Betty's case for relief pursuant to the AEMLD, which requires that she show that the alternative design (*i.e.*, a tractor with a ROPS) would have eliminated or reduced Jesse's injury.  Thus, Mr. Ney's opinion is relevant.  Further, the probative value of the testimony is not substantially outweighed by any factors listed in Federal Rule of Evidence 403.  Hence, Betty's objection to relevance is without merit.

## 2.    *Whether Mr. Ney's Opinion Satisfies* Daubert *and Rule 702*

First, Betty criticizes Mr. Ney for not doing accident reconstruction analysis and for relying on Mr. Kent's work.[8]  She says that at Mr. Ney's August 15, 2013 deposition, he admitted that he had never seen Mr. Kent's reconstruction work-product.[9]  Further, Betty criticizes that Mr. Ney has never participated in actual tractor rollover testing.  Altogether, Betty asserts that Mr. Ney's testimony fails to meet Rule 702 and *Daubert*'s requirements that expert testimony be "based on sufficient facts or data" and "the product of reliable principles and methods."  Fed. R. Evid. 702(b)–(c).

These objections are without merit, and the court will allow Mr. Ney to testify, based on his engineering experience, that it cannot be known for certain whether the tractor Jesse drove would have stopped rolling at 90 degrees.  *See Morris*, 455 F. Supp. 2d at 1331("The *Daubert*-type analysis should not be used to disfavor expert testimony grounded in experience or engineering practice rather than in pure scientific theory."); *Reid*, 430 F. Supp. 2d at 1369–70 ("In a products liability case . . . it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and

---

[8] Betty raises this objection even though *her* design expert, Mr. Berry, relies on the reconstruction analysis of *her* accident reconstruction expert, Mr. Webb.

[9] And here, Betty ignores that Mr. Kent's reconstruction analysis and testimony serve a different evidentiary purpose of supporting Deere's contributory negligence defense, whereas Mr. Ney's opinion serves the purpose of rebutting Betty's experts' opinions.

knowledge after a review of evidence.").   Betty's motion to exclude Mr. Ney's

testimony for failure to comport with Rule 702 and *Daubert* is due to be denied.

**3.      *Whether the Probative Value of Mr. Ney's Opinion is Outweighed***

***by the Danger of Confusing or Misleading the Jury***

Finally, Betty argues that because Mr. Ney's opinion is speculative and

unfounded, it could easily confuse or mislead the jury, and thus, it should be

excluded pursuant to Federal Rule of Evidence 403.   The court disagrees.   Mr.

Ney's opinion is straightforward and is not likely to mislead or confuse the jury.

In summary, the court rejects each of Betty's objections, and Betty's motion

to exclude the opinion testimony of Kirk Ney is due to be denied.   Assuming that a

proper foundation is laid at trial, Mr. Ney will be allowed to testify to his opinions.

**F.   Deere's Motion for Summary Judgment (Doc. # 49)**

When Deere filed its motion for summary judgment, it sought summary

judgment on all six of Betty's claims alleged in her amended complaint.   Pursuant

to Betty's representations at the pretrial conference in this case and consistent with

the pretrial order drafted by the parties, Betty abandons her claims for negligent

failure to warn, wanton failure to warn, and breach of warranty.   (*See* Pretrial

Order (Doc. # 125).)   Thus, Deere's motion for summary judgment as to those

counts is moot.

Betty's remaining claims are for (1) product liability under the AEMLD,[10] (2) negligence, and (3) wantonness.  (*See* Am. Compl., Doc. # 18.)  Deere argues that each claim fails as a matter of law.

**1.     *Whether Inadmissible Expert Opinion Testimony Prevents Betty from Meeting Her Evidentiary Burden on Her Claims***

---

[10] To succeed on an AEMLD claim, a plaintiff must prove that:

(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) Showing these elements, the plaintiff has proved a prima facie case although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132–33 (Ala. 1976).  The plaintiff carries the burden of proving design defect, and thus, he must show that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product."  *Jernigan*, 883 So. 2d at 662 (internal quotation marks and alterations omitted).  He may do this by showing that his injuries "would have been eliminated or in some way reduced by use of the alternative design," and that

taking into consideration such factors as the intended use of the product, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

*Id.* (internal quotation marks and alteration omitted).

Deere asserts that Betty lacks evidence that Jesse's death would have been prevented if the tractor had been equipped with a ROPS when it was manufactured. It is Betty's burden to prove at trial that Jesse's injuries would have been eliminated or reduced by the use of an alternative design. *Jernigan*, 883 So. 2d at 662. Moreover, Deere argues that proximate cause is an element of both negligence and wantonness. (*See* Doc. # 49, at 8 (citing *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).) Thus, Deere implies that Betty cannot show that Deere's negligence or wantonness caused Jesse's death.

As discussed *supra* in Part IV(A)–(B) regarding Deere's *Daubert* motions, Deere asserts that neither Mr. Berry nor Mr. Webb is qualified to express opinions about the cause or prevention of Jesse's injuries because neither expert has any medical or biomechanical engineering training. Additionally, Deere states that Mr. Webb's reconstruction is faulty because he used incorrect dimensions for his proposed ROPS structure. Lastly, Deere avers that Betty's experts failed to perform the testing and analysis required by *Daubert* to support their opinions. Betty defends her experts and incorporates her arguments made in response to Deere's *Daubert* motions. (*See* Docs. # 76, 77.)

In accordance with the court's prior conclusions with respect to Deere's *Daubert* motions, Betty meets her burden of producing expert opinion evidence, which a jury may credit, that Deere's tractor caused the rollover that crushed Jesse

and that Jesse would not have been crushed by a ROPS-fitted tractor.  Thus, there is a genuine dispute of material fact precluding the entry of summary judgment on the AEMLD claim.

As for the issue of causation, Deere seems to interweave the AEMLD requirement of plaintiff's reduced or eliminated injuries by use of alternative design with the common-law tort requirement of proximate cause.  (*See, e.g.*, Doc. # 49, at 8–9; Doc. # 90, at 3, n.3.)  These are distinct questions.  Betty claims that Deere's tractor, which was manufactured without a ROPS, rolled over and crushed Jesse.  There is therefore evidence of proximate cause to support the common-law negligence and wantonness claims, and whatever argument Deere makes to the contrary is rejected.

### 2. *Whether Jesse Was Contributorily Negligent as a Matter of Law*

Next, Deere claims that it is undisputed that Jesse drove in an unreasonable manner, and thus, his contributory negligence bars Betty's success on her AEMLD and negligence claims.  Deere relies on Betty's admission that driving a tractor on an embankment is dangerous.  Betty responds with two arguments: (1) that contributory negligence is not a defense in this case; and (2) even if the defense is available to Deere, Deere cannot establish that Jesse was contributorily negligent as a matter of law.  It is Betty's position that Jesse "somehow got on the

embankment, [and] no one knows why, but it appears from the evidence [that the encounter with the slope was] unintentional."  (Doc. # 75, at 33.)

      **a.**     **Availability of Defense**

Betty contends that a contributory negligence defense is unavailable to Deere.  The Alabama Supreme Court acknowledged in *Dennis ex rel. Dennis v. Am. Honda Motor Co*., 585 So. 2d 1336 (Ala. 1991), that contributory negligence is a defense to AEMLD actions, but only under certain theories like "plaintiff's misuse of the product."  *Id.* at 1339 (quoting *Atkins v. Am. Motors Corp*., 335 So. 2d 134, 143 (Ala. 1976)); *but see Haisten v. Kubota Corp.,* 648 So. 2d 561, 565 (Ala. 1994) ("A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product. Contributory negligence is a separate defense from product misuse." (internal citation and quotation marks omitted)).  The *Dennis* Court rejected the notion that "[a] plaintiff's *mere inadvertence or carelessness* in causing an accident" could be an affirmative defense to an AEMLD action, as this "would go against the purpose of the AEMLD, which is to protect consumers from defective products."  *Id.* at 1339 (emphasis added).  Further, Betty points out that there is no evidence establishing that Jesse was to blame for the accident.

While Betty is correct that the evidence does not establish that Jesse was contributorily negligent, Deere is correct that the defense of contributory

negligence is available in this case. *See Haisten*, 648 So. 2d at 565 (affirming trial court's jury instruction on contributory negligence in AEMLD case involving defective tractor where plaintiff used tractor on a slope). Even so, on these facts, the issue of contributory negligence is a question for a jury.

### b.   "Conscious Appreciation of Danger" Standard

Further, Betty claims that Deere is incapable of proving at summary judgment that Jesse was negligent as a matter of law. "The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 860 (Ala. 2002). The *Hannah* court required "a defendant seeking a summary judgment [to] show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Id.* The court distinguished between the standard for granting judgment as a matter of law and the instruction given to a jury:

> A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger.

*Id.* at 861.

Deere does not rebut Betty's argument; it simply insists that the evidence is uncontroverted that Jesse acted in an unreasonable manner.  Deere lacks evidence to show that Jesse had "a conscious appreciation of danger" when his tractor encountered the embankment.  No one knows Jesse's state of mind, and there are no witnesses to the accident to corroborate Deere's theory that Jesse purposefully drove in reverse onto the slope.  Thus, Deere is not entitled to judgment as a matter of law on its contributory negligence defense.

3.   *Whether Deere is Entitled to Judgment as a Matter of Law on Betty's Wantonness Claim*

Finally, regarding Betty's wantonness claim, Deere argues that there is no evidence that it acted with a conscious disregard to the rights and safety of others because it made a ROPS available and encouraged its use.  "To establish a claim of wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.   To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains."  *Norfolk S. Ry. Co. v. Johnson*, 75 So. 3d 624, 646 (Ala. 2011) (internal quotation marks omitted).

Deere discusses *Turney v. Ford Motor Co.*, 418 N.E.2d 1079, 1085 (Ill. App. Ct. 1981), where an Illinois court rejected a "punitive damages claim" because the plaintiff could not show that Ford acted willfully, with gross negligence, or with

42

wanton disregard for others' safety.  The *Turney* court affirmed the dismissal of the punitive damages claim because the evidence showed that Ford sold a ROPS at a loss in an effort to encourage consumers to affix a ROPS to their Ford tractors.  *Id.* Further, the court considered evidence that Ford successfully designed its tractors to decrease the likelihood of rollovers, which further proved a lack of "reckless[] disregard for the safety of others."  *Id.* at 1086.  Deere compares itself to Ford and points out that it made ROPS available for its tractors at cost, without a profit. Deere further claims that it had knowledge of only a few rollover accidents of the 2040 model prior to the manufacture of Jesse's tractor in 1976.  Finally, Deere cites its commitment to developing and promoting the use of ROPS on its tractors before and after the manufacture of Jesse's tractor.

Betty counters that there is substantial evidence that Deere "was aware prior to the manufacture of [Jesse's] tractor of the crushing, fatal injuries that would result" if its tractors rolled over without a ROPS.  She says Deere was also aware that its efforts to promote ROPS as an optional rather than a standard feature were ineffective.  Betty cites numerous studies available to Deere prior to 1976–77 that made Deere aware of the superior safety of ROPS-fitted tractors and the advice that ROPS be standard rather than optional equipment.  (*See* Doc. # 75, at 45–50.) She reminds the court that *Turney* is not binding and is distinguishable factually. Deere makes no counterargument in its reply brief.  (*See* Doc. # 90.)

The court concludes that the wantonness claim should survive summary judgment. It may be clearer after a presentation of Betty's evidence at trial whether Deere is entitled to judgment as a matter of law on this claim.

### 4.      *Whether the Common Law Rule of Repose Bars Every Claim*

Finally, Deere argues that every claim is barred by Alabama's 20-year common-law rule of repose because Deere manufactured the tractor in 1976 and sold it in 1977, 35 years before Jesse's accident in 2012. Deere concedes that the Alabama Supreme Court ruled in *Collins v. Scenic Homes, Inc.*, 38 So. 3d 28, 35 (Ala. 2009) that the rule of repose did not bar a plaintiff's action where the plaintiff's right to sue did not accrue until after the passage of 20 years. *See also Owens-Illinois, Inc. v. Wells*, 50 So. 3d 413, 417 (Ala. 2010) (same holding). Deere cites pre-*Collins* case law for the proposition that the passage of time is all that matters when evaluating the rule of repose as a defense to a tort claim. *E.g.*, *Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d 758, 765 (2002) ("If . . . time has elapsed, no claim can be pursued.") Deere points out that *Collins and Owens-Illinois* contradict the Alabama Supreme Court's prior holdings as well as other jurisdictions' rulings. Deere labors to distinguish the instant case from *Collins* and *Owens-Illinois* by arguing that those cases involved dormant defects (a building code violation and asbestos, respectively), whereas it was manifest to Jesse that the Deere Model 2040 tractor lacked a ROPS. Hence, Deere asks for judgment as a

matter of law.   Alternatively, Deere suggests that the court should certify a question to the Alabama Supreme Court because "there are no clear controlling precedents."  (Doc. # 49, at 25 (citing Ala. R. App. P. 18(a)).)

Betty responds that the Alabama Supreme Court's rulings in *Collins* and *Owens-Illinois* are consistent with its rulings prior to 2009.  She cites numerous cases as examples, (Doc. # 75, at 52–57), and claims that the rule of repose has no application in a wrongful death claim like hers.  The court agrees with Betty's positions that *Collins* and *Owens-Illinois* are not the only cases supportive of her position and that the rule of repose has no application to this case.  Deere's common law rule of repose defense is without merit, and its invitation to certify a question to the Alabama Supreme Court is declined.

To recap, Deere's motion for summary judgment on Betty's remaining AEMLD, negligence, and wantonness claims is due to be denied.  Deere's motion for summary judgment with respect to Betty's abandoned negligent and wanton failure to warn claims and breach of warranty claim is due to be denied as moot.

## V. CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that:

1.    Deere's Motion to Exclude Testimony of Andrew Webb (Doc. # 47) is DENIED;

2.      Deere's Motion to Exclude Testimony of Thomas Berry (Doc. # 45) is GRANTED IN PART and DENIED IN PART, as set out within this opinion and order;

3.      Deere's Motion to Strike Affidavits of Thomas Berry and Andrew Webb (Doc. # 93) is DENIED;

4.      Betty's Motion to Exclude Testimony of Joe Kent (Doc. # 59) is GRANTED IN PART and DENIED IN PART, as set out within this opinion and order;

5.      Betty's Motion to Exclude Testimony of Kirk Ney (Doc. # 60) is DENIED;

6.      Deere's Motion for Summary Judgment (Doc. # 49) is DENIED with respect to Betty's three remaining claims and DENIED AS MOOT with respect to Betty's three abandoned claims.

DONE this 31st day of January, 2014.

/s/ W. Keith Watkins
_____
CHIEF UNITED STATES DISTRICT JUDGE